CHANCERY.

Case 4.

April 16.

Sharp's bill against the Trustees of Lexington to recover two lots, on the claim of an original settler in the town.

## Sharp vs. Trustees of Lexington.

Appeal from the Fayette Circuit; JESSE BLEDSOE, Judge.

*Village settlers. Minors. Statutes. Trustees of towns.*

Judge MILLS delivered the Opinion of the Court.

THIS is a bill filed by Richard Sharp against the trustees of Lexington, claiming that he was a settler in the town in the year 1781, and continued there till 1783, and that he was, of course entitled to an in and an out lot in the town, pursuant to a written agreement between the settlers, and the act of assembly, which passed subsequently, relative to that settlement; being the same which are recited and·explained in the case of the Trustees of Lexington vs. Linsey's heirs, 2 Marsh. 443; to which reference is made for a more clear understanding of this. He alleges that on the 30th of September, 1782, the Trustees recognized his right, and by an order on their minutes, assigned to him, as a settler, in lot No. 49. That afterwards on the 12th of December, 1782, in violation of the law and power of said Trustees and his rights, they again caused an entry to be made, adjudging that his in lot No 49 should be forfeited, and also his out lot No. 49. That the trustees not only had not the power to make such a forfeiture, but he was not present, and the entry was mistaken in alluding to out lot No. 49, as there was no such number attached to an out lot in the town ; that they afterwards assigned and conveyed his in lot No. 49 to another, under whom it has been held ever since. He states that there is now only one in lot and one out lot left unappropriated, which he prays may be assigned and conveyed to him. In short, his claim, as set out, is similar, in many respects to the one set out by Lindsey's heirs, in the case before cited; with this excep-

tion, he does not pretend that he ever signed the original agreement among the settlers for the division of the territory, as the remote ancestor of Lindsey's heirs had done.

The trustees rely upon various grounds to defeat his claim; and among the rest that the complainant was not entitled to a lot, according to either the terms of the writing among the settlers, or the act of assembly directing the appropriation of the town lands, because he came there a minor, under the control of, and belonging to the family of his father, and with him left the town, and ever since resided in the county. They also rely upon lapse of time.

The court below dismissed his bill and he has appealed.

It is clear both from the evidence and admission of the parties, that Sharp, the appellant, when he came to Lexington, was brought there with the family of his father, and so continued till his father moved away, in the commencement of 1783; that he was of the age of fourteen years when he came, and about seventeen when his father removed from town.

We are satisfied, from an inspection of the written agreement among the settlers, even if the appellant could be considered a party thereto, and also of the act of assembly, that such a minor did not come within the terms of either, and was not provided for thereby. The very making of the instrument of writing supposes that the parties were able to contract. It purports to be between the inhabitants—directs the expense of surveying to be borne by the inhabitants, and of course includes those able to pay. It speaks also of the settlers, who had cleared fields previously, and allowed them to clear adjoining for three years. It also provides for the case of new settlers that may come and settle, and directs how they may clear and improve, and become entitled.

The act of 1779, 1 Litt. L. K. 396, which reserved the town grounds for the settlers, speaks of the

---

SHARP
vs.
TRUSTEES OF
LEXINGTON.

Answer of the Trustees.

Bill dismissed by the circuit court.

Complainant an infant whilst resident in Lexington.

Held, the agreement between the original settlers of Lexington, did not embrace minors resident in the families of their parents.

Act of 1779.

Sharp vs. Trustees of Lexington.

allowing village rights.

settlement of "families," who might have settled in villages, under an agreement to divide the land between them. It reserves the land for the use and benefit of "said inhabitants," and then declares, that "there shall be allowed to every such family, in consideration of their settlement," without the villages as much land as other pre-emptions were entitled to.

Act of 1782 granting the land in Lexington to Trustees to be appropriated according to the original agreement between the settlers.

The act of 1782, 3 Litt. L. K. 542, which first disposed of the lands in the town of Lexington, refers to the agreement among the settlers, and of the necessity of passing the titles to the settlers. It vests the tract in trustees and authorizes them to convey to those already settled on the lots, and prescribes the conditions which the settlers shall perform.

Minors in the families of their fathers not entitled under the act of '82 to the settlement rights to lots in Lexington; only such persons as were able to contract were entitled.

There is not in either of these instruments any provision for the minor children in a family, as well as the head of it; and if intended, it could not have been omitted and left to implication only. They designed to embrace those only who had the control of themselves, and who were capable of contracting for, improving, and residing upon lands. If each child was to be admitted by construction, it would apply with equal force to every age and each sex, without any limitation, and the fund would have been wholly insufficient, and would have been disposed of to those who added no strength to, but rather increased the weakness of the village. The whole was then designed to secure to heads of families a home for the whole family, on which they could support and provide for their children instead of receiving from government a provision for every child.

Nor were minors in the families of the villagers entitled to the 400 acres village rights and 1000 acre pre-emption in the country.

It might indeed be as plausibly contended that each child was a villager and entitled to a settlement of 400 acres without the village, and a pre-emption of 1000 adjoining, as that each should be entitled to a lot; and thus the lands of Kentucky could not have held out, when distributed in portions for children. Many fathers would have had as many settlements and pre-emptions under their control as they had children, and thus appropriate an immense territory.

The only claim then, which the appellant can set up, is the order of the Trustees recognizing his title to the in lot. He seems to insist that their once having admitted his title, ought to be conclusive against them, and they had no authority to forfeit it, or retract their determination,

Although the Trustees might have had no power to declare lots forfeited, by imposing conditions not within the terms of the grant, it does not follow that if they acknowledged a claim through a mistaken construction of the law, they had no power afterwards to retract it. They were Trustees for the settlers, and also for the public, as they were to sell to others all the lots beyond what the settlers should take under their mutual agreement, and if they let in a man as a settler, who did not come whithin the description, they so far did an injury to either settlers or purchasers, or the inhabitants of the town. They were authorised to adjust and fix the boundaries of lots; but they are not constituted a tribunal to decide on the rights of settlers, whose decisions should be conclusive or final against those whom they represented or themselves. They were liable to be deceived by false representations, and if they assigned a lot through a mistaken belief of facts, they might afterwards resist the conveyance of the lot, and were not estopped to shew the truth of the case; and they have done so in the present case. They shew that the appellant had no original claim, and was not entitled to the allotment made to him, and the order of allotment cannot be held conclusive. They also show that their predecessors at an early period, within a few months after the allotment, questioned and retracted it. The last order or entry, it is true, used the term forfeited, but states no reason for the forfeiture, and does not recite any failure on his part to perform any conditions imposed upon him, and it is, therefore, as probable that it was because he did not possess the necessary qualifications of a settler, as for any other cause. He seems not to have contested this retraxit of their grant at the time, or after he became twenty one years of age, which furnishes a presumption, that it was done on account of his not be-

*Sharp vs. Trustees of Lexington.*

The order made by the trustees, assigning to Sharp as a settler an in lot of the town, was not conclusive against them, but they had power to set it aside and refuse a conveyance, on the ground he had no right at first.

SHARP
vs.
TRUSTEES OF
LEXINGTON.

ing entitled to any lot originally. They afterwards allotted and conveyed this lot to another, but did not assign to the appellant another lot; which shews that they went on the ground that he was entitled to none at first. We cannot hold this first allotment to him conclusive or inviolable, and conceive the appellees ought to have been permitted to question his original claim on its merits, which they have done with success.

As the appellees have been successful in shewing that he had no title originally, it is unnecessary to go into the enquiry, whether the complainant has lost a right by lapse of time, when no such right exists.

The decree is affirmed, with costs.

*Haggin* and *Loughborough*, for appellant; *Humphreys*, for appellee.